## Wytheville.

### BAYLOR & CARR v. FULKERSON'S EX'ORS AND OTHERS.

#### JULY 7, 1898.

#### Absent, Buchanan and Cardwell, JJ.

1. GUARDIAN AND WARD—*Settlements—How Viewed—Dealings between Guardian and Ward.*—Settlements made by a guardian with his ward soon after the latter comes of age, and especially before he is in the possession of his property, are viewed by courts of equity with a watchful and jealous eye. The law, however, does not prohibit the guardian from dealing with his recently emancipated ward, and a release of the guardian or a gift to him may consequently stand, if shown to have been made deliberately, and with a sufficient opportunity for consultation and advice.

2. LACHES—*Guardian and Ward—Case in Judgment.*—Long and unexplained acquiescence in a settlement between guardian and ward is an effectual bar to proceedings to impeach it. In the case in judgment the guardian was the father of his wards; the settlement was made by the wards deliberately and voluntarily, after ample time for advice and consultation ; the wards had been of age several years and had married and removed to homes of their own ; the children had ample notice of the several capacities in which their father was indebted to them ; there was no misrepresentation or concealment on the part of the father, and the settlement was allowed to remain unimpeached and undisturbed for a period of twelve years, and until after the death of the father.

HELD: Such laches under such circumstances leaves the wards without any standing in a court of chancery, and their bill was properly dismissed.

Appeal from a decree of the Circuit Court of Lee county pronounced November 5, 1897, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*H. S. K. Morrison* and *B. H. Sewell,* for the appellants.

*Pridemore & Sewall* and *J. H. Fulton,* for the appellees.

HARRISON, J., delivered the opinion of the court.

It appears from the record that A. H. Fulkerson, by his second wife, who was Henrietta Baltzell, had three children, viz.: John B., Jennie, and Kate. These three children, their mother having died in 1863, inherited an interest in the estate of their maternal grandfather, and also became entitled to other property under the will of their maternal uncle, Joseph C. Baltzell, who died in 1866. After the death of the grandfather, intestate, which occurred in 1863, very soon after the death of his daughter, A. H. Fulkerson qualified as guardian of his three children.

The administrators of Joseph C. Baltzell, the uncle, were successively John G. Kreger, W. M. Hopkins, and A. H. Fulkerson. No settlement was ever made before a commissioner by either one of these fiduciaries.

In March, 1880, Kate, the youngest child, married Robert F. Carr, and in September, 1882, Jennie married Charles E. Baylor.

In March, 1884, A. H. Fulkerson and his wards, the husbands of Jennie and Kate uniting, made and entered into a contract under seal, which sets forth the several capacities in which A. H. Fulkerson is liable, viz.: as guardian, as administrator of Joseph C. Baltzell, and as surety for W. M. Hopkins, a former administrator of Joseph C. Baltzell, and sets forth that, as guardian and administrator, said Fulkerson had received various sums of money, notes, accounts, bonds, rents, &c., which had been partly disbursed and expended for the

benefit of his wards, and of which no accurate account had been taken and no settlement thereof made before a commissioner, and further sets forth that, in order to fully and finally settle and adjust all these various matters of account and liabilities, the said Fulkerson should pay to Charles E. Baylor, and Jennie, his wife, $500; to Robert Carr, and Kate, his wife, $500; and to J. B. Fulkerson, $500. In consideration of these sums, the receipt of which is acknowledged, the wards agree to fully and finally acquit, release, and discharge A. H. Fulkerson from all liability on account of the several matters and things enumerated and set forth in the contract.

A. H. Fulkerson died in January, 1896, and in April, 1896, this suit was instituted by his daughters, Jennie Baylor and Kate Carr, who are the appellants here, in which they charge that the contract of 1884, entered into by them with their father, was procured by fraud and concealment, and for the purpose of hindering and estopping them from enforcing the solemn and sacred trust for their benefit voluntarily assumed by him. They pray that the same may be set aside, annulled, and declared void as to them, and that the accounts of A. H. Fulkerson as administrator of Joseph C. Baltzell, deceased, and as their guardian, be settled, and that the executors of A. H. Fulkerson, deceased, be required to pay over from the estate of their father the amounts shown to be due them.

The executors of A. H. Fulkerson demur to and answer this bill, denying all charges of fraud and concealment by their testator in making the contract of 1884, and insist that said contract represents a full and fair settlement of all that was due appellants from their testator in his capacity of guardian, administrator, or otherwise. They further rely upon the statute of limitations, and insist that appellants have been guilty of such laches in bringing their suit assailing the fairness of the transaction, that a court of equity will not now entertain them for that purpose.

The law is well established that settlements made soon after.

the ward comes of age, and especially before he is in possession of his estate, are viewed by a court of equity with a watchful and jealous eye. The law, however, does not prohibit the guardian from dealing with his recently emancipated ward, although it regards the transaction with jealousy, and a release of the guardian, or a gift to him, may consequently stand, if shown to have been made deliberately, and with a sufficient opportunity for consultation and advice. Long and unexplained acquiescence is in this as in other cases of like kind an effectual bar. 2 Leading Cases in Eq., pt. 2, pp. 1212, 1213, and cases there cited; 1 Minor's Insts., 492, and cases cited.

At the time the contract here assailed was entered into between the father and his children, John B. had reached his 27th year, Jennie, who had previously married, was in her 25th year, and Kate, who was married at eighteen, was in her 23d year. None of them was living with the father, but in homes of their own, the appellants under the influence and protection of their respective husbands, who were men of intelligence and business capacity, and they, ladies of education. There was no undue haste about the execution of the contract; on the contrary, it appears that there was ample time for consultation and advice, and that it was executed deliberately and voluntarily. The contract on its face was ample notice, if any was wanting, of the characters in which the father was under obligation to settle with his wards, and gave a full account of the character of property that had come to his hands in which they were interested. It also informed them that no accurate account had been kept, and no settlement made before a commissioner. There is not shown to have been any misrepresentation on the part of the father, or the concealment of any material fact. It further appears that Charles E. Baylor, the husband of one of the appellants, certainly soon after the execution of the contract was investigating these matters and advising with counsel in regard thereto, and in May, 1886, he re-

ceived a letter from the clerk of the county court of Washington county, giving him an elaborate and detailed account of the matters and items of charge against A. H. Fulkerson, now set up in the bill and alleged to have been discovered since the death of A. H. Fulkerson in 1896. This letter also discloses the fact that Baylor was then conferring with counsel and contemplating a suit against his father-in-law.

Notwithstanding this knowledge of the facts, and all the means of knowledge then within easy reach of the appellants, they remain silent for twelve years, acquiescing in the contract they have made, until their brother, John B., and all other persons connected with the transactions they now seek to investigate, have passed away, and within ninety days from the time their father's lips are sealed in death, they bring this suit. Such laches under such circumstances leaves appellants without ground to stand upon in a court of conscience, and their bill was therefore properly dismissed.

While this decision rests upon the doctrine of laches, it is proper to say that before the Circuit Court dismissed appellants' bill, the cause was referred to a competent commissioner, who, after an elaborate and painstaking investigation, as appears from his report, covering many pages of the record, stated the accounts of A. H. Fulkerson as administrator and as guardian, with the result that appellants had been overpaid by their father in the final settlement of 1884.

This report, and the evidence upon which it is based, has been carefully considered, and no error appears therein to the prejudice of appellants.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*